UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TARENCE BANKS,

                Plaintiff,

v.                                        Case No. 18-cv-1768-pp

HARMEETH UPPAL, JOHN LAGIUDICE,
FROEDTERT HOSPITAL, GLENN SHI,
and LISA SIENKIEWICZ,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING HIS COMPLAINT (DKT. NO. 1)**

---

Plaintiff Tarence Banks, who is representing himself, filed a complaint alleging that the defendants committed medical malpractice. Dkt. No. 1. He also filed a motion seeking leave to proceed without prepaying the filing fee. Dkt. No. 2. This decision resolves the plaintiff's motion and screens his complaint.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. The PLRA allows a court to let an incarcerated plaintiff proceed with his lawsuit without prepaying the case filing fee if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). On November 8, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $10.51. Dkt. No. 4. The court received that fee on November 26, 2018. The court will

1

grant the plaintiff's motion to proceed without prepayment of the filing fee and will require him to pay the remainder of the $350 filing fee over time in the manner explained at the end of this order.

## II. Screening the Plaintiff's Complaint

The PLRA requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). Under the PLRA, a court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain enough facts, accepted as true, to make the complaint "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a

*pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    A.    The Plaintiff's Allegations

The plaintiff alleges that after he was shot in his left bicep on October 8 (he does not specify the year), he was transported to Froedtert Hospital from a hospital in Racine. Dkt. No. 1 at 2. The plaintiff alleges that he had to go to the OR nearly every other day to have the wound cleaned because defendant Dr. John Lagiudice an infectious disease doctor characterized the wound as "one of the worse infections they had seen." Id.

At some point, Dr. Lagiudice and another doctor drew some lines on the plaintiff's left leg and right thigh and talked to him about the procedures they were going to do. Id. at 2-3. Later, Dr. Lagiudice informed the plaintiff that the tissue in his right arm had good blood flow and they were ready to do the procedure. Id. at 3. Within a day or so, the plaintiff was taken to the OR and had a bone graft. Id. The plaintiff woke up and was taken back to his room, where nurses checked on the plaintiff's wounds daily. Id. One day, a nurse informed the doctor about a concern with the plaintiff's vitals. Id. According to the plaintiff, Dr. Lagiudice checked his vitals, noted that the plaintiff's blood pressure was high and asked the nurse for scissors. Id. Dr. Lagiudice allegedly cut the stiches in the plaintiff's arm, and "right away blood [started] shooting out of [his] arm." Id. The plaintiff asserts that Dr. Lagiudice told the nurse to call the OR to let them know they were coming down. Id. The plaintiff states

3

that he signed some papers, and, when he woke up, he was taken back to his room. Id. According to the plaintiff, Dr. Lagiudice later told the plaintiff that there were complications and that the bone graft wouldn't take. Id. at 4.

Defendant Dr. Harmeeth Uppal then started coming to talk to the plaintiff about removing his arm because there was nothing else they could do. Id. The plaintiff states that he talked to Dr. Uppal about the procedure and how much of the arm he would remove. Id. Dr. Uppal allegedly told the plaintiff that he wasn't going to cut off his whole arm and that the plaintiff would be able to get a prosthesis. Id. The plaintiff explains that, when he woke up, his whole arm was gone. Id.

The plaintiff further alleges that while at Froedtert, he complained to the nurses about pain on the left side of his back. Id. The plaintiff states that on November 11, 2013, he was taken back to the Racine County Jail. Id. He explains that he was frequently sent back to the infectious disease doctors at Froedtert because of an infection. Id. He says that at one point while he was in the Racine County Jail, green stuff began to ooze out of his back. Id. Two or three weeks later, a bullet came out of his back, from the area where he told the Froedert nurses he was having pain in. Id.

The plaintiff states that in January of 2017, while reviewing medical documents related to another case, he came across a paper stating that "the bone graft didn't take because of failure and infection." Id. 4-5. He asserts that he "was told by [an]other orthopedic surgeon that the doctors at Froedtert should have waited until the infection was gone to do the procedure." Id. at 5.

4

The plaintiff does not indicate when the unnamed orthopedic surgeon told him this, but he alleges that it was because of this that he had to have his arm amputated. Id.

The plaintiff asserts that Dr. Lagiudice lied to him by saying that he did not have an infection and says that if he had been told he had an infection he would have asked more questions. Id. He says he was never given a chance by the doctors at Froedert. Id.

The plaintiff seeks to bring medical malpractice claims against the defendants in their individual and official capacities.

### B. The Court's Analysis

The plaintiff says that he is suing the defendants in both their individual and official capacities. The difference between official capacity and individual/personal capacity is significant. "Personal-capacity suits seek to impose personal liability upon a governmental official for actions he takes under color of state law . . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotes omitted)).

A personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal right. Id. An official-capacity suit is appropriate when the person being sued was executing or implementing the official policy or custom of a government entity. Id. The

5

plaintiff's allegations do not give rise to a reasonable inference that any of the defendants acted under an official policy or custom. The court will not allow the plaintiff to proceed against any defendant in his/her official capacity.

Under 28 U.S.C. §1331, a federal court has jurisdiction over a case only when the claims arise under the Constitution or federal law. When the plaintiff's only claims arise under *state* law, a federal court does not have jurisdiction. A plaintiff who has only state law claims must file his case in state court (unless the plaintiff is a citizen of a different state than the defendants, which is not the case here). The plaintiff asserts that he wants to proceed on medical malpractice claims, which are state law claims. If the plaintiff truly wished to sue the defendants for malpractice only, he could not do so in this federal court.

The PLRA, however, requires the court "to identify cognizable claims" based on the allegations in the complaint; the court is not limited to the theories the plaintiff advances. 28 U.S.C. §1915A. Even though the plaintiff mentioned only the state-law claim of malpractice, the court will evaluate the plaintiff's allegations to determine whether he has stated a claim arising under the Constitution or federal law. See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("[A] plaintiff need not plead particular legal theories . . . in order to state a claim.").

Under 42 U.S.C. §1983, a plaintiff may sue defendants only if they acted under the color of state law when they allegedly violated the plaintiff's rights. To act under the color of state law means that an individual's authority to act

6

comes from state law. Usually, a state actor is employed by the state, but not always. The Supreme Court has identified two general ways to determine whether a person who is not a state employee is a state actor. See Wade v. Byles, 83 F.3d 902, 905 (7th Cir. 1996). "The first [way] includes situations where a state effectively directs, controls, or encourages the actions of a private party. . . . [The second way includes situations] in which a state delegates a 'public function' to a private entity." Id. (citations omitted). If the state delegated its responsibility for the plaintiff's medical care to the Froedtert doctors, it arguably delegated that public function to a private entity. Put another way, the defendants may be deemed state actors if they became an arm of the state by performing functions that were "traditionally the exclusive prerogative of the State." Wade, 83 F.2d at 905 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 353 (1974)).

The court does not have enough information to determine whether the defendants were acting under color of state law when they treated the plaintiff. Consistent with the liberal screening standard, the court will assume for purposes of screening only that they were.

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of prisoners." Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997) (internal quotations and citations omitted). This standard contains both an objective element (that the medical needs be

7

sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). Id.

The court will allow the plaintiff to proceed on a deliberate indifference claim against Dr. Lagiudice. The plaintiff alleges that his bone graft failed, at least in part, because the procedure was performed despite the presence of an infection. He implies that Dr. Lagiudice was involved in the decision to perform the bone graft, and perhaps was the person who did it. According to the plaintiff, another doctor told him that the procedure should not have been attempted until after the infection was resolved. Construing these allegations broadly, the court finds that the plaintiff has sufficiently alleged that Dr. Lagiudice's involvement in the procedure was "so far afield of accepted professional standard as to raise the inference that it was not actually based on medical judgment." Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006).

The court will not, however, allow the plaintiff to proceed with a deliberate indifference claim against Dr. Uppal. The only allegations the plaintiff makes against Dr. Uppal are that, prior to surgery, Dr. Uppal allegedly told the plaintiff that Uppal would not have to remove his whole arm and that after the plaintiff woke up from the surgery, his whole arm was gone. The plaintiff's does not allege that Uppal had no valid medical reason for removing the whole arm, or that Uppal removed his whole arm recklessly or for reasons not based on medical judgment.

The court also will not allow the plaintiff to proceed on a claim against Drs. Glenn Shi or Lisa Sienkiewicz. The plaintiff named these individuals in the

caption of his complaint and states the relief he wants from them but made no allegations against them. In order to state a claim against someone, a plaintiff must give that person fair notice of what the plaintiff alleges they did or did not do to violate his rights. See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000).

The court also will not allow the plaintiff to proceed on a claim against Froedtert Hospital. It appears that the only reason the plaintiff named Froedtert as a defendant is because the defendants worked there. This is not enough. Under §1983, a plaintiff cannot hold one person liable for the misconduct of another, and cannot sue a private corporate employer for the misconduct of its employees unless the plaintiff can show "that his injury was caused by a [corporate] policy, custom, or practice of deliberate indifference to serious medical needs, or a series of bad acts that together raise the inference of such a policy." Shields v. Ill. Dept. of Corrections, 746 F.3d 782, 796 (7th Cir. 2014). The plaintiff has not alleged that Froedtert had such a policy, custom or practice, nor has he alleged a pattern of bad acts raising the inference of such a policy.

Finally, the court will not allow the plaintiff to proceed on medical malpractice claims. The court acknowledges that it could exercise supplemental jurisdiction over these state-law claims, but it will not do so because it appears that they are barred by Wisconsin's statute of limitations. Wis. Stat. §893.55(1m) states that a person may sue a health care provider to recover damages for an injury resulting from an operation within three years

9

from the date of the injury or within one year from the date the injury was discovered.

With regard to Dr. Lagiudice, the plaintiff alleges that he learned that Dr. Lagiudicie performed the bone graft despite the presence of an infection in "January of last year," or January 2017. Dkt. No. 1 at 5. Under Wisconsin's statute of limitations, the latest possible date the plaintiff could have sued Dr. Lagiudice for medical malpractice was January 2018; he filed this suit in November 2018. Regarding Dr. Uppal, the plaintiff knew upon waking up from surgery that Dr. Uppal had removed more of his arm than he had represented would be necessary. Although the court does not know the exact date of the plaintiff's operation, it does know that it was sometime prior to November 2013, see dkt. no. 1 at 4, some five years before the plaintiff filed this complaint. As already noted, the plaintiff has made no allegations against Drs. Shi or Sienkiewicz. The court will not allow the plaintiff to proceed with medical malpractice claims against any of the defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Harmeeth Uppal, Froedtert Hospital, Glenn Shi and Lisa Sienkiewicz.

The court **ORDERS** the United States Marshal to serve a copy of the complaint and this order on defendant John Lagiudice under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for

10

making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Lagiudice to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $339.49 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will enter a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 9th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**